IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SHANNON ANKARLO, individually and as representative of the class,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. _____<br><br><br>CLASS ACTION COMPLAINT<br>(JURY TRIAL DEMANDED) |

Plaintiff Shannon Ankarlo ("Plaintiff"), by and through her attorneys, and on behalf of herself, the Putative Class set forth below, and in the public interest, brings the following Class Action Complaint against Defendant Wells Fargo Bank, N.A., ("Defendant" or "Wells Fargo"), pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA").

## PRELIMINARY STATEMENT

1. Wells Fargo routinely obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action, such as termination, reduction of hours, change in position, failure to hire, and failure to promote.

2. While the use of consumer report information for employment purposes is not *per se* unlawful, it is subject to strict requirements under the FCRA. Wells Fargo has

1

willfully violated these requirements in systematic violation of Plaintiff's rights and the rights of other Putative Class members.

3. Wells Fargo violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff and Putative Class members based on consumer report information without providing them a reasonable opportunity to respond to the information in the report, dispute its accuracy or completeness, and/or discuss it with Wells Fargo.

4. Based on the foregoing violations, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of a Putative Class consisting of all employees or prospective employees of Wells Fargo in the United States against whom Wells Fargo took adverse employment action on or after April 30, 2010 based, in whole or in part, on information contained in a consumer report, and who were not provided a copy of the report and a description of their rights under the FCRA at least five days prior.

5. On behalf of herself and the Putative Class, Plaintiff seeks statutory damages, costs and attorneys' fees, and other appropriate relief pursuant to the FCRA.

## THE PARTIES

6. Individual and representative Plaintiff Shannon Ankarlo lives and worked in this judicial district, and is a resident of Minneapolis, Minnesota (Hennepin County). Plaintiff is a former employee of Wells Fargo, and is a member of the Putative Class defined below.

7. Defendant Wells Fargo Bank, N.A. does business in Minnesota and throughout the United States. According to its 2011 Annual Report, Wells Fargo has approximately 264,000 full-time employees.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331.

9. Venue is proper in the United States District Court, District of Minnesota, pursuant to 28 U.S.C. § 1391. Plaintiff resides in Minnesota, worked for Wells Fargo in Minnesota, and her claims arise, in substantial part, in Minnesota. Wells Fargo regularly conducts business in Minnesota and is subject to personal jurisdiction in this district.

## ALLEGATIONS REGARDING WELLS FARGO'S BUSINESS PRACTICES

10. Wells Fargo conducts criminal background checks on each person who is offered a job by the company, including those who may be rehires. *See* Ex. 1 at 75 (Wells Fargo Team Member Handbook). Wells Fargo also investigates the employment and educational background of current employees by running background checks.

11. Wells Fargo does not perform background checks in-house. Wells Fargo relies on outside consumer reporting firms, including First Advantage, to obtain background check information. *See* Ex. 2 (Ankarlo Termination Letter). First Advantage maintains a strategic partnership with PrideRock Holdings, a self-described leading provider of fingerprint and data management technology.

12. The reports obtained by Wells Fargo constitute "consumer reports" for purposes of the FCRA because they contain information bearing on a consumer's credit

3

worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living that is used for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes.

13. According to its website, First Advantage provides over nine million employment background verifications annually, and leads the industry in delivering background screening solutions to corporations worldwide. First Advantage's website provides specific guidance to its clients regarding FCRA compliance. For example:

> (i) First Advantage advises that before an adverse action is taken based on a consumer report, the employer should provide the employee or prospective employee a pre-adverse action notice, a copy of the consumer report, and a summary of the rights that the employee or prospective employee has under the FCRA.
>
> (ii) First Advantage advises that "[t]he employer should allow a reasonable amount of time for the applicant to respond to this pre-adverse action notification before final determination is made or adverse action is taken." First Advantage specifically references an FTC opinion letter that has deemed 5 days to be reasonable.

14. Despite its receipt of guidance from First Advantage and its knowledge of the requirements of the FCRA, Wells Fargo willfully violated the statute.

15. The FCRA provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the

report relates -- (i) a copy of the report; and (ii) a description of the rights of the consumer[.]" 15 U.S.C. § 1681b(b)(3)(A).

16. Although the statute is silent on the period of time that an employer must wait before taking an adverse employment action once the required information is provided, longstanding regulatory guidance makes it clear that the employer must give the employee or prospective employee a reasonable time to respond and dispute the accuracy or completeness of the report. *See* Ex. 3 (Weisberg (06-26-97)). The regulatory guidance provides that a five day period is reasonable. *Id.*

17. By failing to provide Plaintiff and other Putative Class members with a reasonable opportunity to respond to the information in the report, dispute its accuracy or completeness, and/or discuss it with Wells Fargo prior to taking adverse employment action against them based on such reports, Wells Fargo willfully disregarded this regulatory guidance and violated 15 U.S.C. § 1681(b)(3)(A).

## ALLEGATIONS RELATING TO PLAINTIFF

18. Plaintiff worked for Wells Fargo as a bank teller from approximately July 2008 to October 2008.

19. After less than a year with another employer, Plaintiff reapplied to Wells Fargo again on or around August 3, 2009.

20. Plaintiff was hired by Wells Fargo, and worked as a customer service representative and loan document specialist until she was terminated on January 20, 2012.

21. On January 18, 2012 or January 19, 2012, Plaintiff received, by mail, a "Pre-Adverse Action Notification" from Wells Fargo dated January 18, 2012 stating that a decision was pending concerning her continued employment with the company. Ex. 4 (Pre-Adverse Action Notification). The enclosed report specifically provided, "THE DECIDING OFFICIAL SHOULD NOT DENY THE LICENSE OR EMPLOYMENT BASED ON THE INFORMATION IN THE RECORD UNTIL THE APPLICANT HAS BEEN AFFORDED A REASONABLE TIME TO CORRECT OR COMPLETE THE INFORMATION, OR HAS DECLINED TO DO SO." *Id.* at 14.

22. On January 20, 2012, Plaintiff was called into a meeting with two Wells Fargo management employees and was told that she had been terminated based on the results of a background check. Plaintiff was also given a termination letter at that time. Ex. 2 (Ankarlo Termination Letter). This was, at most, two days after Plaintiff received the Pre-Adverse Action Notification.

23. The one or two days given to Plaintiff did not comport with longstanding FTC guidance requiring Wells Fargo to wait at least five days before taking an adverse employment action after providing the required information.

## CLASS ACTION ALLEGATIONS

24. Plaintiff asserts claims on behalf of a Putative Class defined as follows:

All employees or prospective employees of Wells Fargo in the United States against whom Wells Fargo took adverse employment action on or after April 30, 2010 based, in whole or in part, on information contained in a consumer report, and who were not provided a copy of the report and a description of their rights under the FCRA at least five days prior.

25.  <u>Numerosity</u>: The Putative Class is so numerous that joinder of all Class members is impracticable. Wells Fargo regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action. Plaintiff is informed and believes that during the relevant time period, thousands of Wells Fargo employees and prospective employees satisfy the Putative Class definition.

26.  <u>Typicality</u>: Plaintiff's claims are typical of the members of the Putative Class. Wells Fargo typically uses consumer reports to conduct background checks on employees and prospective employees. Wells Fargo typically does not provide employees and prospective employees a reasonable opportunity to respond to the information in the report, dispute its accuracy or completeness, and/or discuss it with Wells Fargo prior to taking adverse employment action. The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Wells Fargo treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

27.  <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Putative Class, and has retained counsel experienced in complex class action litigation.

28.  <u>Commonality</u>: Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

    a. Whether Wells Fargo uses consumer report information to conduct background checks on employees and prospective employees;

    b. Whether Wells Fargo provides employees and prospective employees a reasonable opportunity to respond to the information in the report, dispute its accuracy or completeness, and/or discuss it with Wells Fargo prior to taking adverse employment action;

    c. Whether Wells Fargo violated the FCRA by failing to provide employees and prospective employees a reasonable opportunity to respond prior to taking adverse employment action against them based on information contained in consumer reports;

    d. Whether Wells Fargo's violations of the FCRA were willful;

    e. The proper measure of statutory damages; and

    f. The proper form of injunctive and declaratory relief.

29. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

30. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Wells Fargo has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

31.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Putative Class on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

32.     Plaintiff intends to send notice to all members of the Putative Class to the extent required by Rule 23. The names and addresses of the Putative Class members are available from Defendant's records.

## FIRST CLAIM FOR RELIEF
### Failure to Provide Copy of Consumer Report Reasonably in Advance of Adverse Employment Action in Violation of the FCRA
### 15 U.S.C. § 1681b(b)(3)(A)

33. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

34. Wells Fargo used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Putative Class.

35. Wells Fargo violated the FCRA by failing to provide Plaintiff and other Putative Class members a reasonable opportunity to respond to the information in the report, dispute its accuracy or completeness, and/or discuss it with Wells Fargo prior to taking adverse employment action. *See* 15 U.S.C. § 1681b(b)(3)(A); Ex. 3.

36. The foregoing violations were willful. Wells Fargo acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Putative Class members under 15 U.S.C. § 1681b(b)(3)(A). Wells Fargo's willful conduct is reflected by, among other things, the following facts:

   a. Wells Fargo is a large company with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

   b. Wells Fargo knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA;

   c. Wells Fargo voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

   d. First Advantage, the consumer reporting agency that provided Plaintiff's consumer report information to Wells Fargo, has published guidance on its website stating that "[t]he employer should allow a reasonable

    amount of time for the applicant to respond to this pre-adverse action notification before final determination is made or adverse action is taken[,]" and specifically referencing an FTC opinion letter that deemed 5 days to be reasonable; and

  e. The report that Wells Fargo sent to Plaintiff provided that no adverse action should be taken until an applicant has been afforded a reasonable time to correct or complete the information.

37. Plaintiff and the Putative Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

38. Plaintiff and the Putative Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

39. WHEREFORE, Plaintiff, on behalf of herself and the Putative Class, prays for relief as follows:

  A. Determining that this action may proceed as a class action under Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure;

  B. Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Class;

  C. Issuing proper notice to the Putative Class at Wells Fargo's expense;

  D. Declaring that Wells Fargo committed multiple, separate violations of the FCRA;

  E. Declaring that Wells Fargo acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

  F. Awarding statutory damages as provided by the FCRA;

11

G. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

H. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

40. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Putative Class demand a trial by jury.

Dated: April 30, 2012

NICHOLS KASTER, PLLP
E. Michelle Drake, MN Bar No. 0387366
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
drake@nka.com

NICHOLS KASTER, LLP
Robert L. Schug, MN Bar No. 0387013
One Embarcadero Center
Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7235
Fax: (415) 277-7238
rschug@nka.com

ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS